Good morning. May it please the Court, my name is Nichelle Jones. I'm the attorney for the plaintiffs and appellants in this case. I would like to reserve two minutes for rebuttals necessary. The question that the Truer Fact is called upon in this case is to determine whether or not Officer Pelayo of the California Highway Patrol was reasonable in shooting an unarmed suspect, Mr. Cecil Elkins, who was running away from him at the time. There are many tribal issues of fact as to whether the actions of Officer Pelayo was in fact reasonable, and I think that the district court made inferences of fact in favor of Officer Pelayo, which is impermissible in the granting of a motion for summary judgment. One of the biggest issues is whether or not Mr. Elkins actually reached inside of his waistband, but if the court reads the statements of the officers, that statement actually was not made. There's some testimony that he jumped from an 8-foot wall, lands in a crouched position, and immediately begins running. In a running position, your hands are going to be at mid-level. When you jump over an 8-foot wall, it's not uncommon that you're going to land in a crouched position. So was it reasonable for Officer Pelayo? One, did Officer Pelayo see Mr. Elkins' hands in a waistband area? But is it reasonable for Officer Pelayo to believe that because Mr. Elkins cleared a wall in a crouched position that he was reaching for a weapon? Well, let's look at that. I mean, if I were to take the comments of the officers themselves, it seems to me you would lose, because when I look at what the officers themselves say, it seems to me that all of those suggest that he was going for his waistband. Would you agree with that? I disagree with that, Your Honor. What comments did they say which don't go to that? The officers all say that immediately upon Mr. Elkins clearing the fence, he started to run away from the officers. Well, now, just a minute. It seems to me that all of them have agreed that he went for his waistband. The thing that bothers me about it is that because I believe that most officers will say that in these situations, then I've got to look at the circumstantial evidence that there is in the record to see if what the officers said bears some validity. Would you agree with that? I would agree with that, Your Honor. Well, that's the thing that I'm getting at. It seems to me the officers were pretty unanimous in suggesting that that's what he did, but then I've got to look at the evidence. What's going to, if you will, help the officers? What's going to take away from the officers? And I saw the evidence in the record that you have suggested about the officer himself and the things he's done, or at least the one incident that he's done in the past, which would lead us maybe in a different direction. However, then I look at what you suggested in your stuff, and all of those seem to suggest he would have gone for his waistline, which gives me circumstantial evidence to believe that he did. For instance, you argue that the defendant was carrying a meth pipe near his waistband. The statement was that there was a meth pipe found in Mr. Elkin's pocket. Well, I understand, but it seems to me that given that kind of evidence, what you're suggesting that, and I think your client then might have even admitted that it's possible he reached for his waistband after his jump, digging, because the meth pipe was digging in his abdomen, or caused him pain, or to steady the meth pipe, or even the state comes back with, and he could have been trying to discard it because he was fleeing. Now, that supports the fact that he would have done that, does it not? Well, I don't think that, I think that that point was raised, Your Honor, just to show that there are a lot of things to consider by the jury as to where Mr. Elkin's hands were positioned. Well, I understand, but what I'm trying to say is if I'm trying to decide whether the police are right in their testimony that he reached for his waistband, I'm going to look at all the other potentials. And I realize that you were saying he didn't go for a gun, he could have been going for a meth pipe, but nonetheless, he could have gone to his waistband based on your argument. Let's go to this. There was idea that he was wearing baggy pants, and that after the jump he was just pulling him up. Nonetheless, and even there's a video that shows he did the same thing when he was getting out of his car, but nonetheless, he would have gone for his waistband. Nonetheless, this is circumstantial evidence to sustain what the officer said he went for his waistband. Isn't that true? I don't think that's true, Your Honor, because I don't think that he would necessarily have had to gone for his waistband. But the argument is... Well, what he's going to do, how's he going to pull up his baggy pants? He could pull up his pants from the sides of his pants. I understand, but nonetheless, it seems to me when you make your arguments about what he could have been doing rather than going for a weapon, it doesn't really say he didn't go for his waistband. It's just a different reason. And that worries me. But I think we go to the bigger issue, Your Honor, that we are arguing facts, and these facts should not have been determined at the district court level. The question, I think, ultimately is whether the officers reasonably thought they were under immediate threat. I think that's the ultimate test. And there's no testimony, as I understand it, that there was a suspicion of a weapon apart from this motion that we're talking about. No one testified to seeing a weapon or thinking he had a weapon, correct? That's correct. But they did testify, did they not, that previously he had used a car to try to go at the officers. But I think even that goes, that testimony comes from Officer Marvin, who is testifying about the intent of Mr. Elkins in trying to run him over. All I'm trying to do is make sure in this process, we don't underestimate the facts that are in the record about his potential. His potential for running away. So, I had another factual question, and that is, there's, the question about running away is, I'm a little unclear as to whether anyone, any of the officers testified that he was facing them at the time they observed this gesture that they testified to, or whether he was facing away from them. The testimony is that when Mr. Palaio cleared the fence, he's facing the fence. And Officer Palaio says that he has a better view of him. It's Officer Palaio who actually says that he bladed and reached for the waistband. Officer Guzman, who's about 6 to 10 feet away from Officer Palaio, says he can't see Mr. Elkins' hands. He can only see him land in a crouched position. So there's no testimony that Mr. Palaio, I'm sorry, that Mr. Elkins ever turned around and made any gesture toward the officers before shots were fired. Roberts. I thought Detective Guzman testified that he saw Elkins reach toward his waistband. Did I misunderstand that? If you look on page 262, it's unclear. He says, I really can't see. I couldn't see his hands. His hands could have been somewhere in the middle. So it's a little bit of a back and forth as to what he actually saw. There's no affirmative statement that Officer Guzman saw Mr. Elkins reach into his waistband. If the record says I thought he did reach for his waistband, I'm wrong about that? I mean, I'm reading right from the record. In the record, there are different statements by the officer about what they actually saw when Mr. Elkins cleared the fence. So I'm not saying that Your Honor did not see a statement where someone said that he reached for a waistband, but you would have to consider the previous statement where they said that they did not see what he was reaching for. Let me look at it. In order to make this real determination, it seems to me that I ought to look at the gram factors. That's correct. If I look at the gram factors, they are the severity of the crime at issue. The crime at issue was assault and attempted, could have been, if we believe the car incident, attempted homicide. So that's pretty severe crime, right? Yes, Your Honor, but if we're looking at that crime with assault for a deadly weapon and we're evaluating whether or not Officer Palaio was being reasonable, his own policy says that you can't use lethal force to detain a suspect who has been accused for assault with a deadly weapon, so you have to consider that. If this is why Officer Palaio thinks that Mr. Elkins is dangerous, he can't use lethal force to subdue him for that type of crime. All I'm trying to do is measure up this, if you will, gram factors. The severity of the crime at issue, it seems to me quite severe. Whether the suspect poses an immediate threat to the safety of the officers. It seems to me that that's where the waistband stuff comes in, because if we got the officer's testimony, he poses a threat. If we don't have the officer's testimony, we won't have a posing of a threat. And then whether he was actively resisting arrest or attempting to evade, there's no doubt he was actively resisting arrest or attempting to evade. So, if I look at the gram factors, it seems to me then the officer's testimony as confirmed by evidence that is not theirs, but something which you also argued as to whether, you know, he might have gone there for carrying a meth pipe. Well, he may have. He might have done that because of a baggy pants. That could have happened. He may have been cradling his injured arm, you even argue. That could have happened. But all of those sustain the fact he went for his waistband. They don't sustain the fact that Mr. Elkins went for a waistband. They explain that there are things that Officer Palaio could have considered before he used lethal force against Mr. Elkins. Ms. Jones, if hypothetically there was not the evidence from the 2010 incident of Officer Palaio and everything else was the same, would summary judgment for defendant be a correct ruling here? I don't think so, Your Honor. Why not? Because I think that if you look at the totality of the circumstances, you're looking at an unarmed man who has been running. He's never done anything dangerous. There's never been any report that he used a gun. There's never been any report that he threatened to use a gun. There's never been any – they were – they chased Mr. Elkins from his car, through a convenience store, through a tire shop. They were in this closed space, and he never turned. He never turned. He never reached for a gun. He never tried to fight the officers. He – But we do have the issue of the car, and we have Officer Palaio's testimony that he believed that Mr. Elkins was reaching towards his waistband, and that put Officer Palaio in fear for his life. And so if that's all we had, why wouldn't qualified immunity apply? Because I thought you were going to say, yes, you probably concede that, and then I would go to, so is it really then a credibility issue based on the 2010 incident? There's a credibility issue definitely based on the 2010 incident, but there's a credibility issue overall. I mean, Officer Palaio is a named defendant in this case, so the jury's going to have to assess whether or not his version of the facts is – are as they are – if they actually happened. But don't – wouldn't we need some – wouldn't the jury need some alternative, some other facts in which to find a genuine issue of a factual dispute? Other than the 2010? Yes. Assuming we had no 2010 incident, what would be there for the jury to reject Officer Palaio's testimony? Because Mr. Elkins never posed a threat at any time during this incident. And then there's also the question about what – how soon after he cleared the fence did Officer Palaio fire a shot? So it would be the fact that there wasn't a gun. Everybody would agree with that. Right. Okay. Did you want to save some rebuttal time? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Nellie Palmer for CHP, Officer Palaio. Within seconds, a surveillance operation turned into what this Court has called a hot pursuit. Counsel, I want to ask you how, in your view, this case is meaningfully distinguishable from our recent case of Estate of Lopez v. Gilhouse, in which we – which in many ways seemed to be even stronger for the officer, but we denied qualified immunity. That was a case in which someone was pointing a toy gun and was killed. Yes, Your Honor. That's the State of Lopez v. City of San Diego? Right. Yes. It is distinguishable, Your Honor, and this is why. In that case, there was circumstantial evidence, which the Court is looking for, to see if you may question the credibility of the officer. And in that case, they had a ballistic expert testimony where it appeared that the bullets were shot at the suspect while he was in the process of lowering himself. In other words, he was in the process of surrendering. Well, here we have the credibility question that my colleague has asked opposing counsel about, which is Officer Palaio's past. And also we have, as I understand the record, there is never a statement by any officer or anyone else that this person ever had a weapon. It was not – they didn't receive intelligence that he did. They didn't see a weapon and so forth. Then he had his back to the officer who shot him. So when you take all of those facts together, and we have to take the facts for this purpose in the light most favorable to the other party, why doesn't that equate to a triable issue for a jury? Your Honor, if I may, I think there are several questions in there. If you look at the testimony of the officer, and if I may, with the Court's permission, describe what the testimony is as to Mr. Elkin's actions the moment that he was being – that shots were fired. And this is the testimony of Officer Palaio that, as counsel has referred to it, as blading. What that looks like is this. Yes, he had turned his back away from the officer who at this point is commanding, let me see your hands, stop, stop, let me see your hands. And this is what the officer is looking for. Instead, what happens is – and this is the testimony of the officer that he – Mr. Elkins turned counterclockwise to the left so that the officer could then see the left side of his face and then see his hand go under his shirt and into the waistband. So he may have been turned away, but he was turned almost directly back toward the officer and making this gripping motion toward his waist. And I may add, just in terms of looking at the other evidence in the record, there is the autopsy report, which is included in the record at 251 to 254. And that's included in – as part of the declaration of appellant's expert, Leonardo Romero. And he was asked to analyze the trajectory of the bullets. And his conclusion was that those bullets, the two to the back, could have happened if Elkins was turned counterclockwise exactly as described by the officer. So rather than having circumstantial evidence that discredits the officer, you have circumstantial evidence that bolsters the testimony of the officer. Counsel, if the jury believes Officer Palaio in your description, Officer Palaio is going to win. If the jury disbelieves Officer Palaio, he may not. Why isn't that the right way to resolve this dispute? Your Honor, it is the testimony of Officer Palaio. And then you also have the testimony of Detective Guzman, who said that he also believed that Mr. Elkins was reaching for a gun by the manner in which he was reaching for his waist. Although Ms. Jones says that there's a conflict in what Detective Guzman said, right? Is there? There is no dispute. In fact, what I believe there is is a concession that Mr. Elkins was reaching for his waist by appellant speculating as to the reason for why he may have done that. And, in fact, this Court in Cruz v. City of Anaheim has stated that it would be unquestionably reasonable for a police to shoot a suspect in Cruz's position who, like Mr. Elkins, was wanted for very serious crimes if he reaches for a gun in his waist, or even if he reaches there for some other reason. So their concession supports the officer's actions in there. And I may add that you also have the testimony of Captain Yen Klen, who said that Elkins reached for his waist the exact opposite of what an officer is trying to see under these very tense, rapidly evolving situations. Is he captain or sergeant? Well, he's captain now. I apologize. He's promoted. He's the captain of the Tenderloin Police Department. The 2010 incident has come up a couple of times, and I'd like to address that with the Court's permission. That is brought up in this case given the ruling in Cruz v. Anaheim. And what I'd like to add with respect to that is that was relevant in Cruz v. Anaheim because there were various inconsistencies in that case that called into question the testimony of the officers. For instance, that he had fully emerged from the car and took an aggressive stance that then caused the officers to fear for their lives. Nevertheless, after he was killed, he had to be cut out of his seat belt, and that was one of many, many disturbing inconsistencies in the testimony of the officers. But you would agree with us, would you not, that it seems to me that this case law would suggest that just because the officers say something happens is not the end of the story. We have to find some circumstantial or other evidence outside of their testimony to affirm what they've said, right? I agree, yes. And I guess that's the situation. I mean, I appreciate that you're saying that Guzman testified that he saw him reach toward his lower abdominal area and it could have been the waistband. I appreciate that you said Yen Klan, and I don't know how you say his name, but Yen Klan, says, I believe I saw it, and then he goes on to explain the exact manner that he saw him reach. But I guess I'm trying to figure out what is the added evidence that would also suggest what they're saying. Have I got it all when I'm talking about the evidence that the plaintiffs come up with that even though they could have gone to the waistband, it wouldn't have been going for the waistband for a gun? Is that the only circumstantial evidence I have? Well, you have, Your Honor. You also have the contemporaneous statements of the officer that he believed that Elkins was reaching for a gun. Well, I got the three officers. And you have also the forensic evidence that supports the testimony of the officers, not just that he was turned counterclockwise, but the expert's testimony also supports that Mr. Elkins had his arm crossed over his body. So it supports the evidence or the testimony of Officer Palaio and of Yen Klan regarding that reach across the body. And back on that 2010 incident, in Cruz, the officer in question had used the exact same explanation, as this Court referred to it, or the same song and dance to explain away the exact same use of force here. Yet in Cruz, it was even the other evidence was even more in favor of the officers because they had been told already, I think, in that case that he was armed or that he had a weapon and that he had said, I'm not going back to prison. So there was actually more evidence in favor of the police in, I think, in Cruz than there is here. Well, there were – I disagree, Your Honor, here. Do you disagree with my characterization of the facts in Cruz? Am I misremembering that? Oh, no. Well, Your Honor, I disagree that the evidence was stronger for the officer in Cruz. Am I correct about what happened in Cruz, that there was information that this person could be armed and that he had said he wasn't going back to prison? Yes, Your Honor. Okay, so that's a real red flag for an officer, I would assume. Right. And in this case, you have a briefing where the surveillance team had been advised to use caution if Mr. Elkins were located because he would likely do anything to evade capture. And, in fact, he had demonstrated that he was capable of just that, reckless, dangerous conduct, in the two days leading up to the incident in question, the first day where he led the police on a high-speed chase and that ended in him crashing his car, the second day where you have an officer-involved shooting that resulted in him being wanted for attempted homicide because he rammed an occupied police car twice with a stolen vehicle and then almost ran over a second officer who had to discharge his weapon in self-defense. The incident in 2010 is so- But basically, though, you have a person not known to ever carry a firearm, right? I mean, he's high on meth, and in this situation, he was running away, running away, running away. There's no indication otherwise. He was running away, Your Honor, but he had his back turned toward the officer. That's what running away usually involves. Yes, but while he was turning his back counterclockwise to the officer, he made this aggressive, furtive movement toward his waist, and there is no evidence in the record to support that that did not happen. And again, you have a concession and then forensic testimony that supports that. And the Cruz case, I think it's an overbroad reading of that case to suggest that just because an officer has some incident, however attenuated the relationship, that that will always call into question the officer and preclude the entry of summary judgment. Very different circumstances. The officer self-reported, and it's also an admissible character evidence to suggest that because the officer in a prior incident said something along the lines of, you know, that he had some propensity to later shoot an individual who was running. I think that that goes too deeply into the Cruz case where you don't have the song and dance situation here because the events are just so vastly different. I see that I'm almost out of time. If I may just provide a brief closing. It is undisputed here that Mr. Elkins was wanted for attempted homicide on a peace officer. And, in fact, the appellants have conceded many of the facts that would support each of the grand factors, the severity, the evasion, and even the threat. There is no material dispute as to whether Mr. Elkins reached for his waistband. The evidence in the record that is cited to make a dispute only described the direction that the individuals landed and don't raise a dispute that requires this case to go before a jury. Here, because the officer's forced response was objectively reasonable given the totality of circumstances, there is no Fourth Amendment violation, and appellants have not shown that the forced response fell outside of the law for the purpose of defeating the application of qualified immunity. And because there is no Fourth Amendment violation, appellants cannot recover under the Fourteenth Amendment for interference with familial relationship, and there is no evidence in the record to support that the officer acted with a purpose to harm unrelated to a legitimate law enforcement purpose. Finally, the state law claims under the Bain Act, wrongful death, and assault and battery are also analyzed under the Fourth Amendment objective reasonableness standard. Thus, because there is no Fourth Amendment violation, appellants cannot recover under those state law claims. We respectfully request that this Court affirm the judgment of the District Court. Thank you. Thank you, Counsel. You have some rebuttal time, Ms. Jones. I have nothing further on the reasonableness for us unless the Court has additional questions, but I did want to add on the Fourteenth Amendment cause of action. I think that there is evidence that there was perhaps a non-legitimate law enforcement motivation for Officer Palaio's act if we look at the November, I mean the 2010 incident. And as far as the state law causes of action, I think that because there is a question as to whether under the totality of the circumstances, because there is a question of whether or not the force used by Officer Palaio is reasonable, that those cases should also be remanded to the District Court and be decided by a jury. I think if you look at the Court's order, he even suggests that there are issues of credibility to Officer Palaio that the District Court determined were not sufficiently enough to discredit Officer Palaio's credibility. But how sufficient those issues are, I think, should be left to a jury. If a gun were found, then would summary judgment clearly be appropriate? I still think there would be trial. Just because a person has a gun doesn't mean that he can be shot. Assuming the gun was in his waistband? If the gun was in his waistband, I still don't think that it would be a reason for him to be shot. The issue would be whether or not Mr. Elkins did anything in a threatening manner towards Officer Palaio. Thank you, Counsel. Thank you. The case just argued is submitted, and we very much appreciate the arguments from both counsel.
judges: Graber, N.R. Smith, Simon